PROXIMITY MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45313. Promulgated April 9, 1931.

*E. S. Parker, Jr., Esq.*, and *J. L. Elliott, C. P. A.*, for the petitioner.

*Arthur Carnduff, Esq.*, and *S. P. Anderson, Esq.*, for the respondent.

OPINION.

TRAMMELL: This is a proceeding for the redetermination of deficiencies in income tax for the calendar years 1926 and 1927 in the amounts of $2,227.21 and $14,611.91, respectively.

The entire amount of the deficiency for 1926 is in controversy, the petitioner contending that it has overpaid its tax for said year in the amount of $646.76. In respect of the deficiency for 1926, the petitioner alleges " that the respondent erroneously disallowed depreciation charged by the petitioner in the sum of $30,527.65; that if respondent had not erroneously disallowed said charge, petitioner would have shown no net taxable profit for 1929 [1926], but would have shown a net loss in the amount of $14,029.85, and the petitioner now claims said adjustment."

Of the deficiency for 1927, only the amount of $9,529.15 is in controversy, the petitioner alleging in that connection:

(8) That for the year 1927, the respondent erroneously and illegally disallowed the sum of $56,556.39, depreciation charged by petitioner, and that for said year respondent erroneously and illegally failed to allow petitioner a credit of $14,029.85, net loss for the calendar year 1926, after all legal and proper adjustments had been made by respondent; * * * and that the increased tax due by the petitioner for said year should amount to only the sum of $5,082.76; * * *

Substantially the same issues were raised by this petitioner in former proceedings involving its tax liability for the years 1922, 1923, 1924, and 1925, reported in 18 B. T. A. at page 691, *et seq.*, and the parties have stipulated that certain facts found by us in our opinion in said former proceedings shall be taken and regarded as facts in this case, as follows:

The petitioner is a corporation, organized in 1895, and the expenditures for capital assets alleged to have been charged to expense, and which the petitioner now seeks to restore to capital account for depreciation purposes, were made in the years from 1896 to 1916, both inclusive. * * *

The issue presented raises two specific questions, which will be considered in the order stated, namely, (1) whether the petitioner is entitled to additional allowances for depreciation in the taxable years on assets, the original cost of which was erroneously charged to expense and should now be restored to capital account, and (2) whether the petitioner is entitled to additional allowances for depreciation on so-called " exhausted assets."

In relation to the first question, the record discloses that in 1920, the respondent made an examination and investigation of the petitioner's books and records, and at that time restored to capital account items * * * in the total amount of $866,566.13. * * *

Bernard M. Cone, president of the petitioner, testified at length concerning the practice of the petitioner in charging capital expenditures to expense. It is shown that prior to 1917 a very conservative policy of bookkeeping was followed. Large amounts of money representing capital expenditures were charged to expense in said years, and it seems to have been the policy of petitioner's president to authorize the charge-off of various capital accounts at the close of each year.

The parties also stipulated as follows:

That as of January 1, 1917, the books of the petitioner showed a depreciation reserve of $850,980.29, that the Revenue Agent's report increased that de-

preciation reserve by the sum of $660,616.90, to a total depreciation reserve as of January 1, 1917, in the sum of $1,511,597.19.

The sole issue urged by the petitioner herein concerns the proper basis for the calculation of deductions for depreciation. In his computations, the respondent adopted the rates used by the petitioner in its returns, and the petitioner here raises no objection to those rates.

The petitioner complains that in computing its taxable net income for the years in question the respondent has not allowed sufficient deductions for depreciation, or exhaustion, wear and tear, of the capital assets used in its business, and to correct the errors alleged to have been committed by the respondent in this regard, the petitioner seeks to have us restore to capital account, for the purpose of computing correct depreciation deductions, two separate items, as follows: (1) The sum of $55,444.95 alleged to represent capital expenditures made in the years prior to 1917, which originally were properly charged to capital and later arbitrarily written off; and (2) the sum of $791,953.13 alleged to represent capital expenditures made in the years prior to 1917, which originally were improperly charged to expense.

The item of $791,953.13 was involved in the former proceedings and was discussed in our opinion mentioned above. However, further reference will be made thereto in connection with the proof now offered to support the petitioner's contention.

To sustain its burden of proof, the petitioner offered in evidence a detailed statement or report prepared by a firm of certified public accountants, dated December 5, 1930, which was admitted in evidence solely for the purpose of showing the designations and entries made upon the petitioner's books. Respondent's counsel agreed that said report correctly reflected the book entries, and both parties agreed that the report was in evidence for said purpose only, and should have no further effect. In that connection, the petitioner offered the testimony of the witness Terry, a certified public accountant, conceded by the respondent to be an expert, under whose direction the report was prepared. This witness testified generally concerning the method used in compiling the figures set forth in the report, and his sources of information.

In respect of the amount of $55,444.95, alleged capital expenditures arbitrarily charged off the books prior to 1917, the witness testified that the items comprising this sum were identically similar to those comprising the amount of $866,566.13 which were restored to capital for depreciation purposes by the revenue agent in 1920, and in effect were items which had been overlooked by the revenue agent at that time. This testimony merely states the conclusion of the witness. Whether said amount represents expenditures which resulted in the acquisition by the petitioner of depreciable capital

assets is the precise question raised for our decision, and the unsupported conclusion of the witness is not competent evidence. However, if it should be conceded that said expenditures were capital in nature, the question then arises whether or not the specific assets so acquired were in use by the petitioner during the taxable years 1926 and 1927. If not, the petitioner would not be entitled to deductions from income for said years on account of their exhaustion. There is not sufficient proof on this point, as will be illustrated below in our discussion of the alleged capital expenditures charged to expense, also set out in the same report.

In respect of the sum of $791,953.13, representing alleged capital expenditures charged to expense prior to 1917, and which the petitioner now seeks to restore to capital for depreciation purposes, the report of the accountant shows the amount segregated or taken out of the expense account and allocated to capital for each of said years, classified under certain general headings, to which further referen:e will be made.

The petitioner contends that the respondent in auditing its returns for the years 1917 to 1927, disallowed as expense certain items improperly charged to that account in the amount of $334,138.66; in other words, that respondent restored said amounts to capital and allowed depreciation thereon. However, the petitioner says that its books were not examined prior to 1917 for the purpose of restoring similar items improperly charged to expense in such years. The accountant's report purports to show that such items were so charged to expense prior to 1917 in said amount of $791,953.13, and the witness Terry testified that the items comprising that amount were "identically similar" to the items arising subsequent to 1916, which were restored by the revenue agent.

As above pointed out, this testimony expresses only the conclusion of the witness, but if such conclusion be a fact, we would still be unable to grant the petitioner the relief sought. The accountant's report covers the years 1897 to 1916, inclusive. A detailed discussion of the figures shown for each year is not deemed necessary, but for illustration we will take the year 1905 as generally representative of all. In that year, it is shown that the petitioner made the following expenditures, which were charged to expense: "Lumber," $868.94; "Brick," $1,614; "Cement, Stone, Sand," $65.01; "Paint & Glass," $118.62; "Roofing Material," $223.69; "Sewers & Gutters," $206.34; "Plumbing & Sheet Metal," $296.15; "Sprinkler & Heating Systems," $6,932.52; "Bobbins, Spools, Shuttles, Heddles, Reeds," $20,005.92; "Card Clothing," $179.52; "Belting & Rope," $612.58; "Identified Labor," $95.04; "Misc. Machine Parts," $6,817.46; "Known New Equipment," $2,756.94; total, $40,792.73.

The parties have in effect stipulated that the accountant's report correctly reflects the entries made on the petitioner's books, and the accountant testified that the items found thereon are "identically similar" to the items restored by the revenue agent for the years subsequent to 1916. The record discloses, however, that the total of the petitioner's repair and supply account for the years 1897 to 1916 was $1,536,608.49, and that the accountant segregated or picked out therefrom the items which in his opinion had been improperly charged to such expense account in the aggregate amount of $791,953.13 to be restored to capital.

We can not accept the unsupported conclusions of this witness that the items in question represent expenditures which resulted in the acquisition of depreciable assets which were still in use by petitioner in the taxable years, since to do so would permit the witness to decide the very question raised by the pleadings in this case. Particularly, we can not accept such conclusions of the witness when facts disclosed by his report or otherwise by the record bring into serious question the soundness of his conclusions and in other respects the record is silent as to vital facts. In 1905, the petitioner expended for lumber, $868.94; brick, $1,614; cement, stone and sand, $65.01; and for paint and glass, $118.62, charging said amounts to expense. Was this material used by the petitioner in whole or in part for ordinary repairs to its then existing buildings, or was it used in new construction? The record does not tell us. If the material was used for making repairs, the amounts were properly charged to expense. If used in new construction, they would represent capital expenditures. But we do not know the facts. We do not even have the information upon which the accountant based his conclusions.

In the same year, the petitioner expended for bobbins, spools, shuttles, heddles, and reeds the amount of $20,005.92, and for card clothing $179.52, which amounts were charged to expense. It was shown at the prior hearing that the maximum period of useful life of any of these articles does not exceed 10 years, and that for card clothing the period of useful life is from four to six years. Presumably, then, such articles purchased in 1905 were worn out and replaced not later than 1915 and could not be made the subject matter of depreciation allowances for the years 1926 and 1927.

With respect to the item "Identified Labor," it was clearly shown at the prior hearing that labor was currently charged to the expense account; that no records were kept from which any reasonably accurate allocation of such items as between expense and capital could now be made, and that the allocation attempted to be made by the accountant must necessarily be on the basis of pure guesswork.

The objections above pointed out may be applied to many of the other items and in respect of all the years embraced in the accountant's report. We do not think it necessary, therefore, to extend this opinion by further discussion of the details of the document in question. The evidence, in our opinion, is insufficient to sustain the petitioner's contentions.

But the petitioner argues that because the Commissioner restored to capital certain expenditures charged to expense in the years subsequent to 1916, the accountant's report should be accepted by us as evidence that similar items charged to expense in the prior years should be so restored. In that connection, the petitioner in its brief says:

The Commissioner never examined these same expense accounts for years prior to 1917. Is it but reasonable to assume that the petitioner was charging some of this same class of items to the expense accounts prior to 1917, and is it but reasonable to assume that a Certified Public Accountant would be able to go through the expense accounts prior to 1917 just as the Agent has subsequent to 1917 and pick up the same class of expenditures which the Commissioner goes on record as saying are not expense items.

We can not agree with the petitioner's contentions, nor accept its reasoning. The determinations of the respondent, which the petitioner is here attacking, are presumed to be correct until the petitioner, by competent evidence, establishes error. No such presumption attaches to the report of the certified public accountant.

The issue raised in this proceeding is governed by the Revenue Act of 1926, which provides in section 204 (c) that the basis upon which exhaustion, wear and tear are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property, with exceptions not here material. In subdivision (a) it is provided that the basis for determining gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property, and in subdivision (b) that the basis for determining the gain or loss upon the sale or other disposition of property acquired before March 1, 1913, shall be either the cost of such property or the fair market value of such property as of March 1, 1913, whichever is greater.

If the petitioner here had submitted proof of the depreciated cost or fair market value of the assets being used in its business on March 1, 1913, and the periods of useful life then remaining, and in addition had shown the cost of the assets subsequently acquired and the dates of acquisition, the rates being agreed upon, we could then have determined the correct amount of the deduction to which the petitioner is entitled in computing the net income for each of the tax able years. If such amounts exceeded the amounts allowed by the

respondent, the petitioner would have been entitled to increase the deductions to the extent of such excess. By adhering to the plainly stated bases provided in the statute, the involved and complicated questions raised by the petitioner would have been avoided. Particularly, the question of the petitioner's right to depreciation on the so-called exhausted assets would have disappeared.

This situation we pointed out explicitly in our opinion in the prior proceedings, *supra*. However, the petitioner did not see fit to submit the proof indicated, but has again presented the same issue upon the same theories and has again offered substantially the same evidence as in the former proceedings. Our decision must be the same.

The respondent has determined deficiencies against the petitioner for the years 1926 and 1927 in the amounts hereinabove stated, which determinations are prima facie correct. The petitioner alleges that in computing the deficiencies the respondent committed certain errors, which the evidence adduced wholly fails, in our opinion, to establish. Hence the determinations of the respondent must be approved.

*Judgment will be entered for the respondent.*